UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JAMES BIEAR,

       Petitioner,         15-cv-8761 (PKC)
                   09-cr-1185 (PKC)

   -against-          MEMORANDUM
                   <u>AND ORDER</u>

UNITED STATES OF AMERICA,

       Respondent.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

   Petitioner James S. Biear, who is proceeding on his own behalf <u>pro se</u>, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255.  In November 2010, a jury found Biear guilty of ten counts relating to his scheme to steal money, artwork and personal items that belonged to an elderly, ailing individual who he served as a personal assistant.  This Court sentenced Biear to ten years of imprisonment and four years of supervised release.

   Biear now asserts that he did not receive the effective assistance of counsel guaranteed by the Sixth Amendment to the U.S. Constitution.  For the reasons explained, his motion is denied.

BACKGROUND.

   On or about October 12, 2010, the government filed a ten-count superseding indictment against Biear.  (09 Cr. 1185, Docket # 55.)  It charged Biear with interstate transport of stolen property in violation of 18 U.S.C. § 2314; wire fraud in violation of 18 U.S.C. § 1343; bank fraud in violation of 18 U.S.C. § 1344; mail fraud in violation of 18 U.S.C. § 1341; access-

device fraud in violation of 18 U.S.C. § 1029; and five counts of illegal monetary transactions in violation of 18 U.S.C. § 1957.  (Id.)

Biear's trial commenced on November 8, 2010.  The government presented evidence that from 2005 to 2007, Biear was employed as a personal assistant and driver to Kenward Elmslie, a poet and heir to the Joseph Pulitzer fortune.  Government evidence showed that Elmslie was in poor health and suffering from memory problems that developed into Alzheimer's disease, and that Biear had access to Elmslie's art, homes, personal information, bank accounts and credit cards.

The government called 25 witnesses.  The Court received into evidence certain items and documents that Biear stole, as well as bank records, receipts, emails and tax records offered by the government.  The evidence showed that over approximately two years, Biear stole 11 items of artwork, two rare books, 93 pieces of silver and $3.2 million in cash, and that he incurred thousands of dollars in credit card debt under Elmslie's name for his own personal use.  Additional evidence showed Biear's efforts to sell some of the stolen items and to deceive law enforcement and insurers about his activities.

On November 22, 2010, a jury returned a guilty verdict on all ten counts.  (Tr. 1149-51.)  On March 29, 2012, this Court sentenced Biear to 120 months of imprisonment and four years of supervised release.  (09 Cr. 1185, Docket # 118.)

Biear moved, pursuant to Rules 29 and 33, Fed. R. Crim. P., for a judgment of acquittal, or, alternatively, a new trial.  (09 Cr. 1185, Docket # 69.)  He argued that the evidence at trial was insufficient to support the guilty verdict.  The Court denied the motion, and stated that "[t]here was sufficient evidence from which a reasonable jury could conclude that the defendant took the victim's money, artwork and other valuables and did so with the requisite

knowledge and intent." United States v. Biear, 2011 WL 336383, at *3 (S.D.N.Y. Jan. 31, 2011).  The Court also rejected Biear's argument that the government failed to timely disclose certain statements that Elmslie made, as well as the results of Elmslie's mental exam, noting that the relevant materials were produced to Biear approximately five months before trial.  See id.

Biear appealed his conviction to the United States Court of Appeals for the Second Circuit.  He argued, among other things, that his conviction was based on insufficient evidence, that his sentence was procedurally unreasonable, that this Court unreasonably applied sentencing enhancements for abuse of a position of trust and for a vulnerable victim, that the government failed to produce exculpatory evidence consistent with Brady v. Maryland, 373 U.S. 83 (1963), and that he did not receive the effective assistance of counsel.  See United States v. Biear, 558 F. App'x 61 (2d Cir. 2014).  The Second Circuit affirmed Biear's conviction on all counts, and stated, among other things, that "we are convinced that the jury's guilty verdict was supported by sufficient evidence on each count."  Id. at 62.  It described Biear's Brady claim as "meritless," and noted that Biear could raise his ineffective assistance claim as part of a section 2255 motion.  Id.  The United States Supreme Court denied Biear's petition for a writ of certiorari on November 10, 2014.  Biear v. United States, 135 S. Ct. 500 (2014).

DISCUSSION.

In his 2255 petition, Biear asserts that he was denied the effective assistance of counsel guaranteed by the Sixth Amendment, as applied in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ."  Id. at 689.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of

reasonableness." Id. at 687-88. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. In addition to ineffectiveness, Biear must "affirmatively prove prejudice," and "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 693, 694.

Biear contends that his counsel was constitutionally ineffective in failing to file a motion to suppress certain evidence, failing to argue that the government made untimely evidentiary disclosure and failing to explain counsel's plea negotiations with the government. (See 15 Civ. 8761, Docket #1.) The Court addresses each of argument in turn.

    I.    Biear's Proposed Motion to Suppress.

Biear argues that his trial counsel failed to file a motion to suppress evidence obtained in a search of his home that was conducted by the Westchester County Police Department, and that this failure constituted ineffective assistance. Biear's petition states:

> There is a defective jurat on the "Owner's Deposition(s) Bates No(s).: 10943, 010945, 0910946, 010947, 010948, 010949, 010950, 010951 and 010952. This defective jurat led to the issuance of a search warrant which led to the recovery of evidence used in the federal trial, consequently, trial counsel was ineffective for failing to uncover this defective jurat. Had trial counsel done so, he would have filed a motion to suppress the evidence and would have had an argument for suppression of evidence in this federal case. Additionally, by staying mum, trial counsel not only failed to address the prejudice elicited, but also failed to preserve the issue for appeal.

(Petition at 25.) New York Executive Law § 137 requires that when a notary public witnesses an affiant's signature, the notary must include certain printed or stamped information concerning his or her notary status. Biear's contends that the absence of a jurat on Elmslie's owner's depositions should have been raised in a suppression motion by his attorney.

As Exhibit 1 to his memorandum, Biear has attached copies of documents captioned "Owner's Deposition Pursuant to Sec. 190.30 of the CPL," which were executed by Biear's victim, Kenward Elmslie, on October 30, 2009. (Petition at 27-33.) In them, Elmslie affirms under oath that he is the owner of certain pieces of art that were unlawfully possessed by Biear. (Id.) Each of the "owner's depositions" is also signed by a William Salis, who states that Elmslie swore to his statements before him. (Id.) As Biear notes, there is no indication of an accompanying jurat signifying that the signatures were witnessed by a notary public. (Id.) In its memorandum, the government states that Salis was an FBI agent who investigated the matter. (Gov't Mem. at 14.)

In opposition, the government has submitted additional owner's depositions, which Elmslie executed on September 28, 2009. (Gov't Mem. Ex. A.) Each of these statements was signed by three witnesses. (Id.) They also contain no indication of an accompanying jurat. (Id.)

There is no basis from which to conclude that the failure to move to suppress evidence based on the absence of a jurat on these documents could constitute ineffective assistance of counsel. First, the owner's depositions are captioned as having been issued pursuant to section 190.30 of the New York Criminal Procedure Law, which governs procedures before grand juries and provides for the use of written statements from an owner of stolen property. The search warrant for Biear's home was dated October 7, 2009 and signed by an Ossining Village Justice in Westchester County. (Gov't Mem. Ex. B.) The warrant states that it is based on the affidavit of Police Officer Donna Sylvester, and does not reference Elmslie's owner's depositions. Assuming arguendo that the absence of a jurat has any consequence to the

reliability of the owner's depositions, Biear has made no showing that the owner's depositions played any role in the search of Biear's residence.

In addition, the owner's depositions of October 30 were sworn to before one witness, and the documents of September 28 were executed in the presence of three witnesses. Although the documents do not contain a jurat, there is no basis from which to conclude that Elmslie's signature was fraudulent. Further, the owner's depositions of October 30, 2009 postdate the search of Biear's home, which occurred on October 9, 2009; the documents submitted by Biear therefore had no bearing on the search of his home.

Further, Biear speculates that "[t]here must be a connection between the defective jurat and the federal case" and that the absence of a jurat "led to the issuance of a search warrant which led to the recovery of evidence used in the federal trial," (Reply at 4) but he has made no explanation as to how this could be the case.

Because there is no basis to conclude that counsel's decision not to move for suppression based on the absence of a jurat in these documents "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688, Biear has not proved that his counsel was ineffective.

Moreover, even if Biear could establish that the failure to file a suppression motion constituted ineffective assistance of counsel, Biear could not prove prejudice. As the government notes, only one of the five ownership depositions related to a work of art that was found in Biear's home. Had this item been suppressed, the government still would have been able to introduce the additional stolen items into evidence. Given the significant trial evidence of Biear's guilt, the suppression of evidence as to one stolen item would not create "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694. Biear therefore has failed to "affirmatively prove prejudice" under Strickland. Id. at 693.

> II. Timeliness of Disclosure.

Biear argues that his counsel was ineffective for failing to object to the "government's untimely disclosure" of facts concerning Elmslie's health. (Petition at 25.) He contends that the government did not make timely or adequate disclosure of Elmslie's medical records related to "Suspicion, Delusions & Alzheimer's." (Reply at 5.) He also argues that his counsel failed to inquire about how certain medications may have affected Elmslie's memory, or to inquire about Elmslie's mental competence at the time that he completed the owner's depositions concerning stolen property. (Reply at 5.)

At a conference of June 11, 2010, the government stated that it would not call Elmslie as a trial witness due to his deteriorating memory and medical condition. (6/11/10 Tr. at 13.) Upon application from the government, the Court issued a confidentiality order dated June 22, 2010, and the government produced to Biear records that it received from Elmslie's primary-care physician. (See Order, 09 Cr. 1185, Docket # 31.) The government represents that it produced the records to Biear on that same date. (Gov't Mem. at 16.)

Elmslie did not testify at trial. The government called Elmslie's primary-care physician as a witness, and she was cross-examined by Biear's counsel using the records produced by the government.

Biear has made no showing that his counsel was ineffective for failing to contemporaneously object to the purportedly untimely production of Elmslie's medical records. They were provided to Biear's counsel on or about June 22, 2010 – nearly five months before trial commenced. This was a more than sufficient period for counsel to review the records. In

failing to make a contemporaneous objection that the disclosure was untimely, counsel's "conduct falls within the wide range of reasonable professional assistance," and did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 689, 688.  Further, given that the documents were used during cross-examination, Biear cannot show any prejudice based on the failure to object.  See id. at 693-94.

Finally, in his reply memorandum, Biear asserts that his counsel was ineffective in failing to question the authenticity or reliability of the owner's depositions, given that "Elmslie was unable to write out the 'signed' affidavit[.]"  (Reply at 6.)  He speculates that medication may have limited Elmslie's ability to recall past events.  (Reply at 5-6.)  But the owner's depositions were set forth in an official form provided by the Westchester County Police (see Gov't Mem. Ex. A.), and, as noted, his counsel was provided with Elmslie's medical records that were used during cross-examination.  Biear has not articulated how counsel's failure to further investigate the forms' authenticity or Elmslie's medical condition amounted to ineffective assistance that resulted in prejudice.

   III.  <u>Plea Negotiations.</u>

Biear asserts that his counsel "fail[ed] to assist in the comprehension of the government's plea offer" and was responsible for "other failures" in the course of his representation.  (Petition at 25.)

In his reply memorandum, Biear sets forth several points where he claims his trial attorney was ineffective.

Biear argues that although he maintains his "insistence of innocence," this should not "negate counsel's responsibility to conduct a proper plea negotiation[.]"  (Reply at 7.)  He also makes several broad criticisms of his trial counsel, who he states had "no use of skill, no

energy, no tapping of every legitimate resource in the undertaking of representation, a violation of the USCA Const. Amend 6 and an unjust outcome." (Id. at 8.)

Biear first raised his argument concerning a purported plea offer in a June 3, 2011 letter that he submitted to the Court after trial and prior to sentencing. (09 Cr. 1185, Docket # 88.) It asserted that Biear's attorney, Alan Seidler, did not adequately communicate the government's purported offer of a plea deal whereby the government would agree to a sentence of no more than two years' incarceration in exchange for Biear's guilty plea. (Id.) In that letter, Biear asserted that Seidler advised Biear that in the event of a guilty verdict, Biear's sentence would be two to three years. (Id. at 2.) This Court then ordered Seidler to respond to Biear's claims, and Seidler submitted a declaration stating that Biear had insisted that he would never plead guilty, and that Seidler advised Biear that his sentence was unlikely to be 20 years' incarceration. (09 Cr. 1185, Docket # 90.) Separately, the government stated in a June 30, 2011 letter that it never made a formal plea offer to Biear. (See Gov't Mem. Ex. H.) The letter stated that while the government had once been "amenable to discussing a plea disposition," Biear "maintained his innocence" and refused to engage in plea discussions. (Id.) It stated that in light of Biear's protestations of innocence, "no plea would even have been possible because the defendant would not have been able to allocute to the charged crimes." (Id.)

Biear has not made any showing of attorney ineffectiveness based on a purported failure to communicate a plea offer. As the government notes, Biear's ongoing assertions of innocence precluded it from entertaining plea negotiations, and an assertion of innocence at allocution would have prompted this Court to reject a plea of guilty. Biear's arguments concerning a purported plea offer are self-serving, unsupported by the record and contradicted by

his continued assertion of innocence. Biear has not identified any attorney ineffectiveness or prejudice based on the purported plea communications that he describes.

Separately, Biear contends that when the Court inquired at trial as to whether he was satisfied with his representation, he responded, "I believe so." (Reply at 7.) Biear states: "This allucute [sic] is short and brings questions: What are your beliefs? Are you experienced enough to make such an appraisal?" (Id.) To the extent that Biear seeks relief on this ground, he is engaging in wordplay and semantics. He does not raise a colorable claim of ineffectiveness or make any showing of prejudice. Moreover, while it plays no role in the outcome of this motion, the Court notes that when Biear was asked, "Are you satisfied with your lawyer's representation of you?", Biear answered, "Yes, your honor," and did not answer, "I believe so." (Tr. 1026-27.)

Lastly, Biear states that his trial counsel did not submit to the Court an e-mail in which Biear asked to "expand on his trial representation." (Reply at 7.) It is not clear what is meant by this assertion or how it goes toward counsel's effectiveness. The Court notes, however, that during the course of his proceedings, Biear was represented by five different attorneys, including from the Federal Defenders Service, counsel appointed pursuant to the Criminal Justice Act and retained counsel. At trial, Biear was represented by retained counsel, Alan Seidler. The Court is unable to discern how Biear's uncommunicated wish to "expand on his trial representation" resulted in ineffective assistance or prejudice at trial.

IV.     No Hearing Is Required.

Biear's claims are summarily dismissed, and no hearing is required to further develop the record as to his entitlement to relief. The text of section 2255 states that no hearing is required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255(b). "To warrant a hearing, the motion

must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013).  No hearing is required "where the allegations are 'vague, conclusory, or palpably incredible.'" Id. at 130-31 (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

       Biear's arguments are vague, self-serving and not grounded in law.  Because he has not raised controverted issues of fact that would entitle him to relief if proved, no hearing on his motion is required.

CONCLUSION.

       Biear's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.  The Clerk is directed to close the case captioned Biear v. United States, 15 Civ. 8761 (PKC).

       Biear has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue. 28 U.S.C. § 2253; see Blackman v. Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011).  His motion was not filed in forma pauperis, and the Court therefore makes no finding pursuant to 28 U.S.C. § 1915(a)(3).

       SO ORDERED.

*[Signature]*
P. Kevin Castel
United States District Judge

Dated: New York, New York
      October 25, 2016